**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DALIT COHEN individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br> v.<br><br>CLINIQUE LABORATORIES, LLC,<br><br>       Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Dalit Cohen ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Clinique Laboratories, LLC ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a putative class action lawsuit on behalf of purchasers of Clinique Redness Solution Cosmetics[1] (collectively, the "Clinique Cosmetics"). Defendant markets and sells the Clinique Cosmetics as cosmetics containing "probiotic technology." However, the Clinique Cosmetics do not contain probiotics because a) the microbial derived ingredients assigned the "probiotic" moniker are purchased in a dead state, and b) the preservatives, *i.e.* antimicrobial chemicals, employed in the Clinique Cosmetics would render any probiotic cultures inert and therefore useless.

---

[1] The Clinique Redness Solutions Cosmetics include the Redness Solutions Soothing Cleanser, the Redness Solutions Daily Relief Cream, the Redness Solutions Makeup Broad Spectrum SPF 15, the Redness Solutions Instant Relief Mineral Pressed Powder with Probiotic Technology, and the Redness Solutions Redness Regimen.

1

2. Probiotic containing cosmetics, like the Clinique Cosmetics, are beauty products that purportedly contain live microbial strains, usually bacterial, and that purportedly target the skin microbiome and preserve the skin's microbiological balance. The probiotic cosmetic industry was valued at $252.5 million dollars in 2019 and is expected to grow at an annual growth rate of 6.5% from 2020 to 2027.

3. Consumers desire probiotic cosmetics because probiotics purportedly improve skin appearance by reducing acne, rosacea, eczema, redness, and other skin ailments.

4. However, contrary to Defendant's representation, the Clinique Cosmetics cannot contain active probiotics. The Clinique Cosmetics contain preservatives that are intended to prevent or decrease microbial growth and therefore render any active probiotic ingredients inert.

5. The microbial-derived raw material ingredients in the Clinique Cosmetics that use the term "probiotics" are manufactured by companies that render the live organisms dead before they are sold to and used by cosmetic companies such as Clinique.

6. As such, Defendant engaged in widespread false and deceptive advertising on its Clinique Cosmetics by claiming the Clinique Cosmetics contain probiotic or microbiome technology (the "Probiotics Claims"). Every package of Clinique Cosmetics prominently claims that the product includes "probiotic" or "microbiome technology."

7. Plaintiff and Class Members purchased Clinique Cosmetics designed, marketed manufactured, distributed, and sold by Defendant as containing "probiotics" Further, Plaintiff and Class Members relied to their detriment on Defendant's representation that the Clinique Cosmetics contain "probiotic" or "microbiome technology." Plaintiff and Class Members would not have paid to purchase Defendant's Clinique Cosmetics– or would not have paid as much as they did to purchase them – had they known that they did not in fact contain "probiotics."

Plaintiff and Class Members thus suffered monetary damages as a result of Defendant's deceptive and false representations.

## PARTIES

8.  Plaintiff Dalit Cohen is a citizen of New York, residing in Roslyn, New York. In September 2020, Plaintiff Cohen purchased a Clinique Redness Solution Daily Relief Cream for her personal use for approximately $50.00 from Bloomingdales in Garden City, New York. Prior to her purchase of Clinique Redness Solution Daily Relief Cream, Plaintiff Cohen reviewed the product's labeling and packaging and saw that the Clinique Redness Solution Daily Relief Cream contained "probiotic" and "microbiome technology. Plaintiff Cohen relied on that labeling and packaging to choose her Clinique Cosmetics over comparable products. Plaintiff Cohen saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that her Clinique Cosmetics contained "probiotics" or "microbiome technology." Plaintiff Cohen relied on these representations and warranties in deciding to purchase her Clinique Cosmetics. Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased her Clinique Cosmetics on the same terms had she known these representations were not true. However, Plaintiff Cohen remains interested in purchasing a Clinique Cosmetics with probiotics and would consider Clinique Cosmetics in the future if Defendant ensured the products actually contained probiotic technology. In making her purchase, Plaintiff Cohen paid a substantial price premium due to the false and misleading Probiotic Claims. However, Plaintiff Cohen did not receive the benefit of her bargain because her Clinique Cosmetics did not, in fact, contain probiotics. Plaintiff Cohen also understood that in making the sale, her retailer was acting with the knowledge and approval of the Defendant and/or as the agent of the Defendant. Plaintiff Cohen

further understood that the purchase came with Defendant's representation and warranties that her Clinique Cosmetics contained "probiotics."

9.      Defendant Clinique Laboratories, LLC. ("Clinique") is a limited liability corporation organized and existing under the laws of the state of Delaware, with its principal place of business in New York, New York.  Clinique manufactures, sells, and/or distributes Clinique-brand products, and is responsible for the advertising, marketing, trade dress, and packaging of Clinique Cosmetics.  Clinique manufactured, marketed, and sold the Clinique Cosmetics during the class period.  The planning and execution of the advertising, marketing, labeling, packaging, testing, and corporate operations concerning Clinique Cosmetics and the Probiotics Claims was primarily carried out at Clinique's headquarters and facilities within New York.  The policies, practices, acts and omissions giving rise to this action were developed in, and emanated from, Clinique's headquarters in New York, New York.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiff, as well as most members of the proposed class, are citizens of states different from Defendant.

11.      This Court has personal jurisdiction over Defendant because it conducts substantial business within New York, including the manufacturing, sale, marketing, and advertising of the Clinique Cosmetics.  Defendant also maintains its corporate headquarters and principal place of business in this judicial district.

## FACTUAL ALLEGATIONS

A.      **Probiotic Formulations**

4

12. Probiotics are *live* microorganisms that, when administered in adequate amounts, confer a health benefit on the host. The term probiotics excludes metabolic by-products of microorganisms, dead microorganisms, or other microbial-based, non-viable products.

13. In 2001, the Food and Agriculture Organization of the United Nations ("FAO") and the World Health Organization ("WHO") convened to establish guidelines regarding probiotics. The organizations defined "probiotics" as "Live organisms which when administered in adequate amounts confer a health benefit on the host."[2]

14. In 2013, the International Association for Probiotics and Prebiotics ("ISAPP") also defined probiotics as "Live microorganisms that, when administered in adequate amounts, confer a health benefit on the host." They also noted that this definition is "the widely accepted scientific definition around the world."[3]

15. Preservatives are bioactive ingredients or substances that have the ability to prevent or decrease microbial growth in a cosmetic product. Antimicrobial preservatives protect cosmetics from contamination of microorganisms, like bacteria, yeast and mold, and can prolong the shelf-life of cosmetic products. Preservatives are a key component in making a cosmetic inhospitable to microorganisms. Inclusion of a preservative into a cosmetic that contains probiotics would render a cosmetic inhospitable to live microorganisms such as probiotics.

16. Cosmetics containing "probiotics" are often formulated with both preservatives and tyndallized, or heat treated, probiotics. Tyndallization intentionally kills the microorganisms and preservatives make the cosmetics inhospitable to them. As a result, cosmetics, like the Clinique Cosmetics, cannot provide any of the promised benefits of a live microbe because the

---

[2] *See* http://www.fao.org/3/a0512e/a0512e.pdf (Last visited February 19, 2021.)

[3] *See* https://isappscience.org/for-scientists/resources/probiotics/ (Last visited February 19, 2021.)

active ingredient, one or more probiotic organisms, has been rendered inert and therefore cannot provide any purported health benefits. Moreover, if the organisms were indeed live they lack any evidence of imparting a health benefit to a consumer after application of a topical composition containing the *live* organism.

   **B.**  **Defendant's Misrepresentations Regarding The Clinique Cosmetics**

  17. Clinique sells, manufactures, and markets its Redness Solutions line of cosmetics, which is sold as a "daily redness regimen" intended to "get redness under control." On the front of the Clinique Packaging, the products are touted as containing "probiotic" or "microbiome technology:"



  18. However, the Clinique Cosmetics contain preservatives that render any added probiotics inert, and are therefore ineffective:

| Product | Preservative |
|---|---|
| Redness Solutions Soothing Cleanser | Butylated HydroToluene and Phenoxyethanol |
| Redness Solutions Daily Relief Cream | Potassium sorbate and Phenoxyethanol |
| Redness Solutions Makeup Broad Spectrum SPF 15 | Phenoxyethanol |
| Redness Solutions Instant Relief Mineral Pressed Powder | Chlorphenesin and Sodium Dehydroacetate |

  19. Defendant's advertising and marketing of the Clinique Cosmetics is false and

misleading and omits material information.  Clinique prominently advertise on the front label that they the Clinique Cosmetics contain "probiotic" or "microbiome technology."  Consumers reasonably expect that Clinique Cosmetics will, in fact, contain live probiotics, by definition.  Nowhere on the Clinique Cosmetics' packaging does Defendant inform consumers that the Clinique Cosmetics do not contain live probiotics.  Defendant's misrepresentations and/or omissions violate consumers' reasonable expectations and, as alleged herein, New York's consumer protection statutes.

20. Defendant knew or should have known that the Clinique Cosmetics express Probiotic Claims were false, deceptive, and misleading, and that Plaintiff, the Class, and Subclass Members would not be able to tell that the Clinique Cosmetics did not contain probiotics absent Defendant's express disclosure.

21. Defendant employs professional cosmetic chemists and microbiologists to create the chemical formulas for the Clinique Cosmetics.  Therefore, Defendant through its employees knew or should have known that the Clinique Cosmetics did not contained probiotics and that it was deceiving consumers by labeling the Products as containing "probiotic" or "microbiome technology."

22. On information and belief, Defendant, through its employees, did know that the Clinique Cosmetics did not contain probiotics, but chose to include the Probiotics Claims because they did not believe their customers would know the difference, or, more insidiously, that *removal* of the word "probiotics" from the product name, positioning, messaging, and branding would render the products far less likely to compel consumer purchase and trial.

23. Had Defendant not made the false, misleading, and deceptive representations and/or omissions alleged herein, Plaintiff and Class Members would not have purchased the Clinique Cosmetics or would not have paid as much as they did for such products. Thus, Plaintiff and Class Members suffered an injury in fact and lost money or property as result of Defendant's wrongful conduct.

## CLASS ALLEGATIONS

24. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

25. Plaintiff seeks to represent a class defined as all people who purchased any Clinique Cosmetics product that falsely advertised that the product purportedly contained "probiotic technology" during the applicable statute of limitations (the "Class"). Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

26. Plaintiff Dalit Cohen also seeks to represent a subclass consisting of Class Members who reside in New York (the "New York Subclass").

27. Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class and Subclass may be expanded or narrowed by amendment or amended complaint.

28. **Numerosity.** The Class and Subclass Members are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimates that there are hundreds of thousands of Members in the Class and in the Subclass. Although the precise number of Class and Subclass Members is unknown to Plaintiff, it is known by Defendant and may be determined through discovery.

29. **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all Members of the Class and Subclass and predominate over any questions affecting only individual Class or Subclass members. These common legal and factual questions include, but are not limited to, the following:

(a) Whether Defendant made false and/or misleading statements to the consuming public concerning the probiotic content of Clinique Cosmetics;

(b) Whether Defendant omitted material information to the consuming public concerning the probiotic content of Clinique Cosmetics;

(c) Whether Defendant's labeling and packaging for the Clinique Cosmetics is misleading and/or deceptive;

(d) Whether Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising and sale of Clinique Cosmetics;

(e) Whether Defendant's representations concerning the Clinique Cosmetics were likely to deceive a reasonable consumer;

(f) Whether Defendant's omissions concerning Clinique Cosmetics were likely to deceive a reasonable consumer;

(g) Whether Defendant represented to consumers that Clinique Cosmetics have characteristics, benefits, or qualities that they do not have;

(h)     Whether Defendant advertised the Clinique Cosmetics with the intent to sell them not as advertised;

(i)     Whether Defendant falsely advertised Clinique Cosmetics;

(j)     Whether Defendant made and breached express and/or implied warranties to Plaintiff and Class and Subclass Members about Clinique Cosmetics;

(k)     Whether Defendant's representations, omissions, and/or breaches caused injury to Plaintiff and Class and Subclass Members; and

(l)     Whether Plaintiff and Class and Subclass Members are entitled to damages.

30.     **Typicality.**  Plaintiff's claims are typical of the claims of the other Members of the Class and Subclass in that, among other things, all Class and Subclass Members were deceived (or reasonably likely to be deceived) in the same way by Defendant's false and misleading advertising claims about the probiotic technology of Clinique Cosmetics.  All Class and Subclass Members were comparably injured by Defendant's wrongful conduct as set forth herein.  Further, there are no defenses available to Defendant that are unique to Plaintiff.

31.     **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the interests of the Members of the Class and Subclass.  Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class and Subclass.  Furthermore, Plaintiff have no interests that are antagonistic to those of the Class or Subclass.

32.     **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class and Subclass Members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually

impossible for Class or Subclass Members to obtain effective redress on an individual basis for the wrongs committed against them.  Even if Class or Subclass Members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  It would also increase the delay and expense to all parties and the court system from the issues raised by this action.  The class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

33. In the alternative, the Class and Subclass may also be certified because:

(a) the prosecution of separate actions by individual Class and Subclass Members would create a risk of inconsistent or varying adjudications with respect to individual Class or Subclass Members that would establish incompatible standards of conduct for Defendant;

(b) the prosecution of separate actions by individual Class and Subclass Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class and Subclass Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c) Defendant has acted or refused to act on grounds generally applicable to the Class and to the Subclass as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the Members of the Class and to the Members of the Subclass as a whole.

## COUNT I
**Violation Of New York's Gen. Bus. Law § 349**
**(On Behalf Of The New York Subclass)**

34. Plaintiff hereby incorporates by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

35. Plaintiff Dalit Cohen brings this claim individually and on behalf of the Members of the proposed New York Subclass against Defendant.

36. Defendant committed deceptive acts and practices by employing false, misleading, and deceptive representations and/or omissions about the probiotic technology of its Clinique Cosmetics to mislead consumers into believing the Clinique Cosmetics contain probiotics.

37. Plaintiff Cohen has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and practices. Specifically, Plaintiff Cohen purchased Clinique Cosmetics for her own personal use. In doing so, Plaintiff Cohen relied upon Defendant's false, misleading, and deceptive representations that Clinique Cosmetics contained probiotic technology. Plaintiff Cohen spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

38. Defendant's deceptive acts and practices were directed at consumers.

39. Defendant's deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations. Defendant knew consumers would purchase Clinique Cosmetics and/or pay more for them under the false – but reasonable – belief that Clinique Cosmetics contained probiotic technology, when they do not. By advertising so prominently that Clinique Cosmetics contains probiotic technology, Defendant proves that information about probiotics is material to consumers. If such information were not material, Defendant would not feature it prominently on the front label of every Clinique Cosmetics package. As a result of its deceptive acts and practices, Defendant has sold thousands, if not

millions, of Clinique Cosmetics to unsuspecting consumers across New York. If Defendant had advertised its Clinique Cosmetics truthfully and in a non-misleading fashion, Plaintiff and other New York Subclass Members would not have purchased them or would not have paid as much as they did for them.

40. As a direct and proximate result of Defendant's false, misleading, and deceptive representations and/or omissions, Plaintiff Cohen and other Members of the New York Subclass were injured in that they: (1) paid money for Clinique Cosmetics that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Clinique Cosmetics they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Clinique Cosmetics they purchased had less value than if Defendant's representations about probiotics were truthful.

41. On behalf of herself and Members of the New York Subclass, Plaintiff Cohen seeks to enjoin Defendant's unlawful acts and practices and recover her actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT II
### Violation Of New York's Gen. Bus. Law § 350
### (On Behalf Of The New York Subclass)

42. Plaintiff hereby incorporates by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

43. Plaintiff Dalit Cohen brings this claim individually and on behalf of the Members of the proposed New York Subclass against Defendant.

44. Defendant engaged in a campaign of false advertising with regard to the probiotic technology of Clinique Cosmetics to mislead consumers into believing the Clinique Cosmetics they purchase contains "probiotics."

13

45. Plaintiff Cohen has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and practices. Specifically, Plaintiff Cohen purchased Clinique Cosmetics for her own personal use. In doing so, Plaintiff Cohen relied upon Defendant's false, misleading, and deceptive representations that Clinique Cosmetics would contain probiotics when they do not. Plaintiff Cohen spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

46. Defendant's deceptive acts and practices were directed at consumers.

47. Defendant's deceptive acts and practices are misleading in a material way because, as alleged above and herein, they violate consumers' reasonable expectations. If Defendant had advertised its Clinique Cosmetics truthfully and in a non-misleading fashion, Plaintiff and other New York Subclass Members would not have purchased the Clinique Cosmetics or would not have paid as much as they did for them.

48. As a direct and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Plaintiff Cohen and other Members of the New York Subclass were injured in that they: (1) paid money for Clinique Cosmetics that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Clinique Cosmetics they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Clinique Cosmetics they purchased had less value than if Defendant's representations about probiotics were truthful.

49. On behalf of herself and Members of the New York Subclass, Plaintiff Cohen seeks to enjoin Defendant's unlawful acts and practices and recover her actual damages or five hundred (500) dollars per violation, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT III
### Breach Of Express Warranty
### (On Behalf Of The Class And The New York Subclass)

50. Plaintiff hereby incorporates by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

51. Plaintiff Dalit Cohen brings this claim individually and on behalf of the Members of the proposed Class and Subclass against Defendant.

52. As the designer, manufacturer, marketer, distributor, and/or seller of Clinique Cosmetics, Defendant issued an express warranty by representing to consumers at the point of purchase that Clinique Cosmetics contained probiotic technology. Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiff and Members of the Class and Subclass.

53. In fact, the Clinique Cosmetics do not conform to Defendant's representations about probiotic technology because Clinique Cosmetics do not, in fact, contain active probiotics. By falsely representing the Clinique Cosmetics in this way, Defendant breached express warranties.

54. On February 9, 2021, prior to the filing of this Complaint, Plaintiff's counsel sent Defendant a warranty notice letter that complied in all respects with U.C.C. 2-607. The letter provided notice of breach of express and implied warranties. The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the U.C.C. 2-607 and state consumer protection laws and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. The letter stated that it was sent on behalf of Plaintiff and all other similarly situated purchasers.


55. As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Class and Subclass were injured because they: (1) paid money for Clinique Cosmetics that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Clinique Cosmetics they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Clinique Cosmetics they purchased had less value than if Defendant's representations about probiotics were truthful. Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiff and Class and Subclass Members would not have purchased the Clinique Cosmetics or would not have paid as much as they did for them.

## COUNT IV
### Breach of Implied Warranty
#### (On Behalf Of The Class And The New York Subclass)

56. Plaintiff hereby incorporates by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

57. Plaintiff Dalit Cohen brings this claim individually and on behalf of the Members of the proposed Class and Subclass against Defendant.

58. Defendant routinely engages in the manufacture, distribution, and/or sale of Clinique Cosmetics and is a merchant that deals in such goods or otherwise holds itself out as having knowledge or skill particular to the practices and goods involved.

59. Plaintiff and Members of the Class and Subclass were consumers who purchased Defendant's Clinique Cosmetics for the ordinary purpose of such products.

60. By representing that the Clinique Cosmetics contain probiotics, Defendant impliedly warranted to consumers that the Clinique Cosmetics were merchantable, such that they were of the same average grade, quality, and value as similar goods sold under similar circumstances.

61. However, the Clinique Cosmetics were not of the same average grade, quality, and value as similar goods sold under similar circumstances. Thus, they were not merchantable and, as such, would not pass without objection in the trade or industry under the contract description.

62. As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Class and Subclass were injured because they paid money for Clinique Cosmetics that would not pass without objection in the trade or industry under the contract description.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, seek judgment against Defendant as follows:

a. Certifying the nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representatives of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass Members;

b. Declaring that Defendant's conduct violates the statutes referenced herein;

c. Finding in favor of Plaintiff, the nationwide Class and the New York Subclass against Defendant on all counts asserted herein;

d. Ordering Defendant to disgorge and make restitution of all monies Defendant acquired by means of the unlawful practices as set forth herein;

e. Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them all the money they are required to pay;

 f. Awarding Plaintiff and Class and Subclass Members their costs and expenses incurred in the action, including reasonable attorneys' fees;

 g. Ordering Defendant to pay pre-judgment interest on all amounts awarded;

 h. Providing such further relief as may be just and proper.

<div align="center"><b><u>JURY TRIAL DEMANDED</u></b></div>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: March 3, 2021       Respectfully submitted,

               **BURSOR & FISHER, P.A.**

               By: */s/ Philip L. Fraietta*
                   Philip L. Fraietta

               Philip L. Fraietta
               888 Seventh Avenue
               New York, NY 10019
               Telephone: (646) 837-7150
               Facsimile: (212) 989-9163
               Email: pfraietta@bursor.com

               **BURSOR & FISHER, P.A.**
               L. Timothy Fisher*
               Brittany S. Scott*
               1990 North California Blvd., Suite 940
               Walnut Creek, CA 94596
               Telephone: (925) 300-4455
               Facsimile: (925) 407-2700
               Email: ltfisher@bursor.com
                   bscott@bursor.com

               **BARBAT MANSOUR SUCIU & TOMINA PLLC**
               Nick Suciu III*
               6905 Telegraph Rd., Suite 115
               Bloomfield Hills, MI 48301
               Telephone: (313) 303-3472
               Email: nicksuciu@bmslawyer.com

               *\*Pro Hac Vice Forthcoming*

               *Attorneys for Plaintiff*